Edward W. Lukas, Jr.
Harrington, Foxx, Dubrow & Canter, LLP
333 South Hope Street, Suite 1000
Los Angeles, CA 90071
(213) 489-3222 x227 (phone)
(424) 354-1853 (Direct Line)
(213) 622-4321 (fax)
Email: elukas@hfdclaw.com

Matthew L. Cutler, *pro hac vice*
Jeremiah J. Foley, *pro hac vice*
Harness, Dickey & Pierce PLC
5445 Corporate Drive, Suite 200
Troy, MI  48098
248-641-1600
mcutler@harnessip.com
jfoley@harnessip.com

Attorneys for Plaintiff MOB ENTERTAINMENT, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOB ENTERTAINMENT, INC.<br><br>     Plaintiff,<br><br>- v.-<br><br>GOOGLE, LLC and<br>VAN PHUONG d/b/a DAIGO GAME<br>2020 INC.<br><br>     Defendants. | CASE NO: 3:25-cv-00531<br><br>**AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Mob Entertainment, Inc. ("Mob Entertainment") by its undersigned counsel as and for its Amended Complaint against Defendants Google, LLC ("Google") and Van Phuong d/b/a/ Daigo Game 2020, Inc. ("Daigo") hereby alleges as follows:

## NATURE OF THE ACTION

This is a copyright infringement, trademark infringement and unfair competition action arising out of Google's and Daigo's unauthorized and willful actions infringing Mob Entertainment's copyrights and trademarks and for Google's and Daigo's unlawful, unfair, and fraudulent business practices.

## THE PARTIES

1.      Plaintiff Mob Entertainment is a Delaware corporation, having a principal place of business at 720 Olive Street, Saint Louis, MO 63101.

2.      Defendant Google is a Delaware Limited Liability Company, having a principal place of business at 1600 Amphitheatre Parkway, Mountainview, CA 94043.

3.      Upon information and belief, Defendant Daigo is an adult individual who has created applications offered on Google Play, Google's application store, that are subject to this lawsuit.

## JURISDICTION AND VENUE

4.      This action arises under 17 U.S.C. § 101 et seq. for infringement of copyrights owned by Mob Entertainment, 15 U.S.C. § 1125 and California Common Law for infringement of Mob Entertainment's trademarks, and for unfair competition under California Business and Professions Code § 17200.

5.      This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331, 1332(a), and 1338(a).  This Court has subject matter jurisdiction over the state claims under 28 U.S.C. § 1367.

6.      Personal jurisdiction exists over Defendant Google because its principal place of business is in California, and in this judicial district.

7.      Personal jurisdiction exists over Defendant Daigo in this judicial district because upon information and belief, Daigo consented to jurisdiction in this Court. The Google Play Developer Distribution Agreement includes the clause "You and Google further agree to submit to the exclusive jurisdiction of the federal or state courts located

within the county of Santa Clara, California to resolve any legal matter arising from or relating to this Agreement." *See* Exhibit 1. Upon information and belief, Defendant Daigo accepted this agreement to upload the infringing applications to Google Play. Upon information and belief, this action arises from or is related to this agreement as the infringing application was sent to Google under this agreement.

8. Further, Defendant Daigo regularly conducts, transacts, and/or solicits business in California and in this judicial district; and/or derives substantial revenue from its business transactions in California and in this judicial district; and/or otherwise avails itself of the privileges and protections of the laws of the State of California such that this Court's assertion of jurisdiction over Defendant Daigo does not offend traditional notions of fair play and due process; and/or should reasonably expect its infringing actions— which caused injury to plaintiff in California and in this judicial district – to therefore have consequences in California and in this judicial district. For example:

    a. Defendant Daigo was systematically directing and/or targeting its business activities at consumers in the U.S., including California, through Google Play, through which consumers in the U.S., including California, can purchase Defendant Daigo's products which make unauthorized use of Mob Entertainment's copyrighted works and trademarks.

    b. Upon information and belief, Defendant Daigo has transacted business with consumers in the U.S., including California, through the sale of his products through Google Play.

    c. Defendant Daigo was aware of Mob Entertainment and its products, and that its infringing actions are likely to cause injury to Mob Entertainment in the U.S., in California, and in this judicial district specifically, as Mob Entertainment conducts substantial business in California.

9.     Venue is proper in this judicial district at least under 28 U.S.C. §§ 1391(b)(2) or 28 U.S.C. §§ 1391(b)(3).

## BACKGROUND

### Mob Entertainment and its Poppy Playtime Related Marks

10.     Mob Entertainment began in 2015 as an entertainment company which created 3D animated videos shown on YouTube attracting millions of viewers worldwide.

11.     Seeking to extend their work into a new medium, in 2021, Mob Entertainment developed a video game it named Poppy Playtime along with its titular character.

12.     Poppy Playtime has become a popular video game, boasting over 74,000 reviews on Steam, a Microsoft Windows gaming platform. Poppy Playtime is also distributed on gaming consoles (such as PlayStation 4, PlayStation 5, Xbox One, Xbox Series S, Xbox Series X, and the Nintendo Switch), and on other platforms such as Roblox, Apple's App Store, and Google Play.

13.     Since being released in October 2021, Poppy Playtime has achieved global success and has led to "Poppy Playtime: Chapter 2" being released in March 2022, and "Poppy Playtime: Chapter 3" being released in January 2024. "Poppy Playtime: Chapter 4" is slated for release in January 2025.

14.     On Google Play alone, Poppy Playtime: Chapter 1 has been downloaded over 500,000 times. Chapter 2 has been downloaded over 100,000 times, and Chapter 3 has been downloaded over 10,000 times.

15.     Mob Entertainment uses the mark "Poppy Playtime" in commerce, including to advertise its video games and related goods.

16.     Mob Entertainment includes the term "Poppy Playtime" in the titles to its video games "Poppy Playtime: Chapter 1," "Poppy Playtime: Chapter 2" and "Poppy Playtime: Chapter 3." Its video games are distributed through many channels under this name.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17.    The mark "Poppy Playtime" is used to identify the Poppy Playtime games on the platforms it is available on, including Google Play. An image of the search results for "Poppy Playtime" on Google Play, featuring three Mob Entertainment authorized applications and the two unauthorized applications subject to this lawsuit is shown below.









18.    Upon information and belief, there are no applications on Google Play containing the phrase "Poppy Playtime" in the title aside from the three Mob Entertainment authorized applications and the two applications that are the subject of this lawsuit.

19.    Mob Entertainment uses the mark "Poppy Playtime" in commerce to advertise and sell licensed merchandise, including on the website www.poppyplaytime.com.

20.    Mob Entertainment owns the trademark registration for "Poppy Playtime," U.S. Reg. No. 7,157,530. The certificate of registration is attached as Exhibit 18, hereto.

21.    The mark "Poppy Playtime" distinguishes Mob Entertainment's games in this series from other video games or applications.

22.    The consuming public associates the mark "Poppy Playtime" with Mob Entertainments video games in the Poppy Playtime series.

23.    Poppy Playtime has over 41 million players worldwide, with about 8 million of those players in the United States.

24.    Mob Entertainment markets its Poppy Playtime brand on its official YouTube channel which has about four million subscribers.

25.    The Mob Entertainment official YouTube channel has received over 600 million views worldwide with over 120 million views in the Unted States.

26.    Poppy Playtime content has received over 100 billion views on YouTube.

27.    Mob Entertainment assists content creators with its content creator program playfully named "Partners in Crime".

28.    Mob Entertainment and its "Partners in Crime" have reached over 180 million YouTube subscribers.

29.    Mob Entertainment has licensed others to create goods using its intellectual property.

30.    Between 2022 and 2024, Mob Entertainment received $12.2 million in revenue from royalties from licensed sales.

31.    Poppy Playtime's fame has led to Legendary Entertainment, the producers of big box office movies like "Dune" and "Interstellar" to partner with Mob Entertainment to make a film adaptation of the Poppy Playtime franchise.

32.    As of this filing, the trailer for "Poppy Playtime: Chapter 4" has received over ten million views on YouTube in only two months.

33.     "Poppy Playtime" has become a household name.

34.    Mob Entertainment uses the mark "Poppy Playtime: Chapter 3" to distinguish its "Poppy Playtime: Chapter 3" video game from other video games, including other games in the Poppy Playtime series.

AMENDED COMPLAINT

35.    Mob Entertainment uses the mark "Poppy Playtime: Chapter 4" to distinguish its upcoming "Poppy Playtime: Chapter 4" video game, from other video games, including other games in the Poppy Playtime series.

36.    "Poppy Playtime: Chapter 1" and "Poppy Playtime: Chapter 3" feature the character Huggy Wuggy.

37.    The Huggy Wuggy character has become massively popular.

38.    An article in Screen Rant, the popular entertainment news website, states that "The new indie horror title Poppy Playtime has swept the internet, and kids have unexpectedly fallen in love with its popular main monster, Huggy Wuggy." https://screenrant.com/poppy-playtime-huggy-wuggy-monster-kids-popular-toys/.

39.    The Screen Rant article further states that "[h]e's become an iconic symbol of the game." *Id.*

40.    Huggy Wuggy has become an iconic symbol of the Poppy Playtime games.

41.    Mob Entertainment uses its mark "Huggy Wuggy" to distinguish its goods from the goods of others.

42.    Consumers associate the mark "Huggy Wuggy" with Mob Entertainment and its Poppy Playtime games.

43.    "Huggy Wuggy" has become a household name and the general public identifies "Huggy Wuggy" with Mob Entertainment's Poppy Playtime games.

44.    The Screen Rant article was published on April 8, 2022, five months after the release of Poppy Playtime Chapter 1.

45.    "Poppy Playtime" and "Huggy Wuggy" became household names prior to April 8, 2022.

46.    "Poppy Playtime: Chapter 2" contains the character Mommy Long Legs.

47.    Mommy Long Legs has come to be identified with the Poppy Playtime series.

48.    Mob Entertainment uses the mark "Mommy Long Legs" to distinguish its goods, including its video games and applications, from the goods of others.

49.    Mob Entertainment also uses the image of Mommy Long Legs as a mark to distinguish its goods from the goods of others. For instance, on Google Play Mommy Long Legs' image is used to distinguish the authorized Poppy Playtime Chapter 2 application from other applications. An image of Poppy Playtime Chapter 2 in Google Play's search results, containing two prominent images of Mommy Long Legs, is shown below.



 Poppy Playtime Chapter 2
Mob Entertainment
4.1 ★    $4.99

50.    Consumers associate the mark "Mommy Long Legs" and the image of Mommy Long Legs with Mob Entertainment and its Poppy Playtime video games.

## Mob Entertainment's Copyrights

51.    Mob Entertainment has created the video games "Poppy Playtime: Chapter 1," "Poppy Playtime: Chapter 2," and "Poppy Playtime: Chapter 3" and has registered its copyrights in those works.

52.    In addition, Mob Entertainment has created many original works of visual art found in the video game Poppy Playtime and its related videos and products and has registered its copyrights in those works.

53.    Examples of the copyrighted works are ones shown in Table 1 below, also attached as Exhibit 2, hereto.

| Title | Copyright Reg. No. | Representative Image of Work |
|---|---|---|
| Poppy Playtime Logo | VA0002313620 |  |
| CH3 Character 4 (plush) | VAU001505833 |  |
| CH3 Character 5 (plush) | VAU001505728 |  |

| | | |
|---|---|---|
| | |  |
| CH3 Character 6 (plush) | VAU001505840 |  |
| CH3 Character 7 (plush) | VAU001505843 |  |

| CH3 Character 8 (plush) | VAU001505842 |  |
|---|---|---|
| Poppy | VA0002328878 |  |
| Mommy Long Legs 2D | VA0002293330 |  |

| Grab Pack | VA0002324267 |  |
| Poppy Playtime: Chapter 2 | PA0002476286 |  |
| Poppy Playtime: Chapter 3 | PA0002476288 |  |

Table 1

## **Google and Daigo's Scam Applications**

54. Google provides applications called "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" which are not authorized by Mob Entertainment on its Google Play store.

55. Google has direct control over the Google Play Store.

56.    The unauthorized version of "Poppy Playtime Chapter 3" can be found on Google's application page: https://play.google.com/store/apps/details?id=com.PoPPyPlaytimeKing.BuggyChapterPlaytimeMOPckapter3. A copy of the webpage as found on January 9, 2025 is attached as Exhibit 3, hereto.

57.    Google's application page contains three screenshots of the Mob Entertainment's copyrighted work "Poppy Playtime: Chapter 2."

58.    Google's search results when one looks up "Poppy Playtime" displays a fourth screenshot of "Poppy Playtime: Chapter 2."



 Poppy Playtime: Chapter 3
Daigo Game 2020 Inc

59.    The application includes many more copies of Mob Entertainment's copyrighted works and trademarks. Screenshots from the unauthorized version of "Poppy Playtime Chapter 3" are attached as Exhibit 4, hereto.

60.    The unauthorized application contains images of Poppy Playtime and Mommy Long Legs. A screenshot from the app (left) is placed next to an image of Poppy Playtime (center) and Mommy Long Legs (right) below for comparison.




61.     The image of Mommy Long Legs is prominently displayed at the top of the main page of the unauthorized application in a frame that always appears at the top of the screen as one scrolls down.

62.     The unauthorized application also contains numerous screenshots from Mob Entertainment's copyrighted "Poppy Playtime: Chapter 2" video game, including Poppy Playtimes copyrighted logo, images of the hands of the copyrighted "Grab Pack" and more images of Poppy Playtime and Mommy Long Legs A screenshot from the application (left) next to an image of the Grab Pack (right) and the Poppy Playtime Logo (bottom) is shown below.






63.    The unauthorized version of "Poppy Playtime Chapter 4" can be found on Google's application page: https://play.google.com/store/apps/details?id=com.chapter4game.playtimechapterp25. A copy of the webpage as found on January 8, 2025 is attached as Exhibit 5, hereto.

64.    Mob Entertainment's "Poppy Playtime: Chapter 4" has not been released yet.

65.    Google's unauthorized "Poppy Playtime Chapter 4" application page contains four screenshots of Mob Entertainment's copyrighted "Poppy Playtime Chapter 3" video game.

66.    The application includes many more copies of Mob Entertainment's copyrighted works and trademarks. Screenshots from the unauthorized version of "Poppy Playtime Chapter 3" are attached as Exhibit 4, hereto.

67.    The application contains images of the copyrighted characters Bubba Bubbaphant, PickyPiggy, CraftyCorn, DogDay and KickinChickin.



68.    The application also contains a screenshot from "Poppy Playtime: Chapter 3" showing the hands of Mob Entertainments copyrighted GrabPack.

AMENDED COMPLAINT



69.     Google's unauthorized "Poppy Playtime: Chapter 3" application and the unauthorized "Poppy Playtime: Chapter 4" application hold themselves out to be Mob Entertainment's "Poppy Playtime: Chapter 3" and "Poppy Playtime: Chapter 4" games respectively.

70.     Google and Daigo make the applications able to be downloaded by users for free.

71.     However, the application does not contain a video game. Instead, it asks users to pay $30 to $95 for the "Guide wuggy playtime mod." The term "mod" typically refers to a modification applied to a video game.

72.     Mob Entertainment sells Poppy Playtime: Chapter 3 on the Google Play Store for $4.99.

73.     When users pay for the "Guide wuggy playtime mod," all they receive is a link to a dead webpage.

74.      When the unauthorized applications are brought up in Google's Play Store on an Android device, the titles include the phrase "Early Access." Screenshots of the application pages on the Play Store app on an Android device are shown below.





75.     Google's webpage for the unauthorized "Poppy Playtime: Chapter 3" application states that "it was released on the 15th of October" and that it "new version game Huggy Wuggy 2023." *See* Exhibit 3.

76.     Upon information and belief, the unauthorized "Poppy Playtime: Chapter 3" application was released on October 15, 2023.

77.     Mob Entertainment's "Poppy Playtime: Chapter 3" was not released until January 30, 2024, at first only on Steam.

78.     Mob Entertainment's "Poppy Playtime: Chapter 3" was not released on Google Play until October 8, 2024.

79.     Google's webpage for the unauthorized "Poppy Playtime Chapter 4" application states that "it was released on the 15th of October." *See* Exhibit 5.

80.     Upon information and belief, the unauthorized "Poppy Playtime Chapter 4" application was released on October 15, 2024.

81.     Mob Entertainment's "Poppy Playtime Chapter 4" has not been released yet.

82.    Google and Daigo's unauthorized applications use Mob Entertainment's trademarks and copyrighted material to trick consumers into spending up to $95 for a game prior to its release on Google Play.

83.    Google receives 15% or 30% of all sales made by the unauthorized "Poppy Playtime: Chapter 3" or unauthorized "Poppy Playtime Chapter 4" applications. The fee schedule Google provides as part of its Distribution Agreement is attached as Exhibit 7, hereto.

84.    Google's website for the unauthorized "Poppy Playtime Chapter 3" application states that over one million people have downloaded it. Exhibit 3.

85.    Google's website for the unauthorized "Poppy Playtime Chapter 4" application states that over 10,000 people have downloaded it. Exhibit 4.

## Google and Daigo's History of Trademark and Copyright Infringement

86.    According to the website App Magic, the game Minicraft 2020 was released on the Google Play Store in February 2020. Daigo is listed as the publisher. The App Magic webpage showing Google Play applications published by Daigo is attached as Exhibit 20, hereto. *See* https://appmagic.rocks/publisher/daigo-game-2020 lnc/1_Daigo%20Game%202020%20lnc.

87.    The Minicraft 2020 game published by Daigo included screenshots of the video game Minecraft on the Google Play Store. The App Magic webpage showing the Minecraft screenshots is attached as Exhibit 21, hereto. *See* https://appmagic.rocks/google-play/minicraft-2020/com.miniworld.mastercrafting.survivalboxbuilding20.

88.    Minecraft is a popular video game marketed by Mojang Studios.

89.    The name "Minicraft 2020" is likely to cause confusion with the trademark "Minecraft".

90.    Daigo is not the creator of Minecraft.

91.     Daigo did not create the screenshots used to market Minicraft 2020 on the Google Play store.

92.     Upon information and belief, the Minicraft 2020 application scammed Google Play users with useless in-app purchases in a manner similar to the Poppy Playtime apps also developed by Daigo.

93.     Upon information and belief, Google received 15-30% of the revenue from in-app purchases made on the Minicraft 2020 application.

94.     The Minicraft 2020 game was removed from the Google Play store.

95.     Upon information and belief, Google reviewed the Minicraft 2020 game on the Google Play store and found that it violated the intellectual property rights of Mojang Studios. Daigo is listed as the publisher.

96.     Google did not ban Daigo from its services after finding that Minicraft 2020 violated the intellectual property rights of others.

97.     According to App Magic, in August 2023 the application "Merge Toilet Monster War" was released on Google Play. Exhibit 20.

98.     The Google Play page for "Merge Toilet Monster War" contains screenshots from Skibidi Toilet, a popular YouTube video series. The App Magic webpage showing the Skibidi Toilet screenshots is attached as Exhibit 22, hereto. *See* https://appmagic.rocks/google-play/merge-toilet-monster war/com.mergetoiletmonter. skinbidiltoilet.

99.     Daigo did not create the Skibidi Toilet videos.

100.    Upon information and belief, the "Merge Toilet Monster War" application scammed Google Play users with useless in-app purchases in a manner similar to the Poppy Playtime applications also developed by Daigo.

101.    Upon information and belief, Google received 15-30% of the revenue from in-app purchases made in the Merge Toilet Monster War application.

102.    Google removed the "Merge Toilet Monster War" application from the Google Play Store prior to January 15, 2025.

103.    Upon information and belief, Google removed the "Merge Toilet Monster War" application because it violated the intellectual property rights of others.

104.    Google did not ban Daigo from using its services after finding that the Merge Toilet Monster War application.

105.    Google did not remove the unauthorized Poppy Playtime Chapter 3 application after finding that the Merge Toilet Monster War application violated the intellectual property rights of others.

106.    The unauthorized Poppy Playtime Chapter 4 application was placed on the Google Play store after Google found that the Merge Toilet Monster War application violated the intellectual property rights of others.

107.    Daigo has not used Google's services to distribute an application that did not violate the intellectual property rights of others.

108.    Google knew or should have known that every application Daigo uploaded to the Google Play Store violated the intellectual property rights of others.

109.    Google did not ban Daigo from using its services.

110.    Google allowed Daigo to use its services when it knew or should have known that Daigo's applications infringed the trademarks and copyrights of others.

## Notice To Google of Its Infringement and Forfeiture of Its
## Safe Harbor Under the DMCA

111.    On October 31, 2024, Mob Entertainment sent a notice to Google to takedown its unauthorized "Poppy Playtime Chapter 3" application. Google's confirmation of the receipt of the notice is attached as Exhibit 8, hereto.

112.    Mob Entertainment used the form Google provides on its website. A copy of this form as found on January 8, 2025 is attached as Exhibit 9, hereto.

113.    The form states "The form of notice specified below is consistent with the form suggested by the United States Digital Millennium Copyright Act." *See* Exhibit 9.

114.    The notice provided by Mob Entertainment contained the electronic signature of a person authorized to act on behalf of Mob Entertainment.

115.    The notice identified the copyrighted work claimed to have been infringed. *See* Exhibit 5 ("This game is a nearly identical copy of Poppy Playtime created by Mob Entertainment.")

116.    The notice identified the material that is claimed to be infringing and that is to be removed. The URL to the infringing application was provided. Exhibit 8.

117.    The notice provided information reasonably sufficient to permit the service provider to contact the complaining party, an email address. Exhibit 8.

118.    The notice contained a statement that Mob Entertainment had a good faith belief that use of the material in the manner complained of is not authorized by Mob Entertainment, its agent, or the law. Mob Entertainment checked the box containing this language on the form Google provided. Exhibit 8.

119.    The notice contained a statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. Mob Entertainment checked the box containing this language on the form Google provided. *See* Exhibit 9.

120.    The notice was a red flag waived in front of Google that it was distributing and displaying Mob Entertainment's copyrighted works.

121.    Google knew, or should have known, of its infringement relating to the unauthorized "Poppy Playtime Chapter 3" upon receiving this notice.

122.    Google did not take down the unauthorized "Poppy Playtime Chapter 3" application following the receipt of this notice.

123.    Google allowed blatant copyright infringement on its Google Play store despite the red flags illustrating apparent infringement.

124.    The confirmation email came from the email address "removals@google.com." *See* Exhibit 8.

125.    The DMCA's safe harbor provision states "a notification of claimed infringement must be a written communication provided to the designated agent of a service provider." 17 U.S.C. 512(c)(3)(A).

126.    Google's designated agent under the DMCA is "dmca-agent@google.com".

127.    Upon information and belief, the DMCA Takedown form Google provides on its website directs takedown notices to "removals@google.com" and not "dmca-agent@google.com."

128.    Upon information and belief, Google directs DMCA takedown notices to an email address that is not its designated agent under the DMCA to trick copyright owners into thinking they sent a DMCA takedown notice.

129.    On December 5, 2024, Mob Entertainment sent an email noting that it had been over a month since it submitted what it believed to be a DMCA takedown request in accordance with Google's procedures. This email is attached as Exhibit 10, hereto.

130.    On December 9, 2024 Mob Entertainment received an email from Google stating that it is removing the unauthorized application from its services because "[t]his content violates our policies." This email is attached as Exhibit 11, hereto.

131.    Google's policies include "We don't allow apps or developer accounts that infringe on the intellectual property rights of others (including trademark, copyright, patent trade secret, and other proprietary rights). We also don't allow apps that encourage or induce infringement of intellectual property rights." A copy of the Google Play Stores Intellectual Property policy is attached as Exhibit 19, hereto.

132.    Upon information and belief, Google reviewed the infringing "Poppy Playtime: Chapter 3" application and found that it infringed upon Mob Entertainment's copyright and trademark rights.

133.    On or before December 9, 2024, Google removed the infringing "Poppy Playtime: Chapter 3" application.

134.    However, by December 13, 2024, the infringing "Poppy Playtime: Chapter 3" application was back on the Google Play store at the same URL it was located on previously.

135.    Upon information and belief, Google put the infringing "Poppy Playtime: Chapter 3" application back on the Google Play Store after its review found that it infringed Mob Entertainment's copyright and trademark rights.

136.    Google continued to supply its Google Play Store to Daigo knowing that Daigo was engaging in copyright and trademark infringement.

137.    On December 13, 2024, Mob Entertainment informed Google that the unauthorized application was still up via email. This email is attached as Exhibit 12, hereto.

138.    In response, on December 16, 2024, Google sent a form email with the same text as the email sent on November 1, 2024. This email is attached as Exhibit 13, hereto.

139.    On December 19, 2024, Mob Entertainment sent another DMCA takedown notice with substantially the same information as its November 1, 2024 notice to the "dmca-agent@google.com" email address. This email is attached as Exhibit 14, hereto.

140.    On December 19, 2024, Mob Entertainment received an email from "removals@google.com" stating that "We can process your notice more quickly if you submit it though our web form. Our form will guide you through the process of submitting the information we need and ensure that your notice is sent to the right place." This email is attached as Exhibit 15, hereto.

141.    In Mob Entertainment's experience, the form did not guide it through the process of submitting the information needed or ensure that the notice is sent to the right place.

142.    Google did not take down the unauthorized "Poppy Playtime: Chapter 3" application following receipt of the DMCA takedown notice. The application was still available until Mob Entertainment filed a complaint on January 15, 2025.

143.    Instead of expeditiously removing the infringing application as required to retain the benefits of the DMCA's safe harbor provision, Google redirected Mob Entertainment to the same form it had used unsuccessfully over six weeks before and requested an additional email stating "This notice is complete."

144.    Google forfeited the benefits of the DMCA's safe harbor provision by failing to expeditiously remove the infringing application.

145.    Google did not ban Daigo after its review of the infringing "Poppy Playtime Chapter 3" application found that it infringed Mob Entertainment's copyright and trademark rights.

146.    On December 30, 2024, Mob Entertainment discovered that the "Poppy Playtime Chapter 4" application was available on Google's Play Store. The listed developer was Daigo.

147.    On December 30, 2024, Mob Entertainment sent a DMCA takedown notice to "dmca-agent@google.com." This email is attached as Exhibit 16, hereto.

148.    On December 30, 2024, Google responded with the same form email it responded with the previous time Mob Entertainment emailed the "dmca-agent@google.com." This response is attached as Exhibit 17, hereto.

149.    Google knew, or should have known, of its infringement relating to the unauthorized "Poppy Playtime Chapter 4" upon receiving this notice.

150.    Google did not take down the unauthorized "Poppy Playtime Chapter 4" application following the receipt of this notice.

151.    Google allowed blatant copyright infringement on its Google Play store despite the red flags illustrating apparent infringement.

152.    As with the unauthorized "Poopy Playtime: Chapter 3" application, Google did not expeditiously remove the infringing "Poppy Playtime Chapter 4" application as required to retain the benefits of the DMCA's safe harbor provision.

153.    Google forfeited the benefits of the DMCA's safe harbor provision for its infringement of Mob Entertainment's copyrighted works contained in the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime Chapter 4" applications.

154.    Google continued to supply its services to Daigo knowing that its services were used to infringe Mob Entertainment's copyright and trademark rights.

### Google's and Daigo's Trademark Infringement

155.    Mob Entertainment's goods are distinguished with the marks "Poppy Playtime," "Poppy Playtime Chapter 3," "Poppy Playtime Chapter 4," "Huggy Wuggy," "Mommy Long Legs" and by the marks consisting of the image of Mommy Long Legs.

156.    Google's website uses the marks "Poppy Playtime", "Poppy Playtime Chapter 3," "Poppy Playtime Chapter 4,"  and "Huggy Wuggy" in commerce to encourage Google Play users to download the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime Chapter 4" applications it has available on the Google Play Store.

  



Poppy Playtime: Chapter 3
Daigo Game 2020 Inc

Poppy Playtime Chapter 4
Daigo Game 2020 Inc

Roblox
Roblox Corporation
4.4 ★

158.    Google's website for the unauthorized "Poppy Playtime Chapter 3" application includes the phrases "Welcome to **Poppy Playtime: Chapter 3** new version game **Huggy wuggy** [*sic*] 2023," "Journey into the **Poppy Playtime** world and let your imagination lose in an unfamiliar environment inside this amazing **Huggy Wuggy** challenge," and "**Poppy Playtime: Chapter 3** Game is a spooky action title" (emphasis added) under the "About this game" section. *See* Exhibit 3.

159.    Google's website for the unauthorized "Poppy Playtime Chapter 4" application includes the phrases "Journey into the **Poppy Playtime** world and let your imagination lose in an unfamiliar environment inside this amazing **Huggy Wuggy** challenge" and "**Poppy Playtime: Chapter 4** game is a spooky action title" (emphasis added) under the "About this game" section. *See* Exhibit 5.

160.    Google Play users are likely to be confused into downloading the unauthorized versions of "Poppy Playtime Chapter 3" instead of the authorized version of "Poppy Playtime Chapter 3."

161.    Google play users are likely to be confused into thinking the unauthorized "Poppy Playtime Chapter 4" application is Mob Entertainment's upcoming "Poppy Playtime Chapter 4."

162.    Google's website indicates that the Developer of the unauthorized versions of "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" is Daigo.

163.    Daigo used the marks "Poppy Playtime," "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" in commerce by naming the applications "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4."

164.    Daigo further used the marks "Poppy Playtime," "Poppy Playtime Chapter 3," "Poppy Playtime Chapter 4," "Huggy Wuggy," "Mommy Long Legs" and the trademark image of Mommy Long Legs in commerce throughout the unauthorized applications themselves.

165.    For example, the top of the unauthorized "Poppy Playtime Chapter 3" application says "**PoppyPlaytime Mommy Long Legs** Fixes **Huggy Wuggy's** Among Biggest Problem." (emphasis added). "Poppy Playtime" and "Mommy Long Legs" are in red text to attract the attention of the user. *See* Exhibit 4.

166.    Just underneath this text is an image of Mommy Long Legs and the mark "Poppy Playtime" in the font and format used by Mob Entertainment. *Id.*

167.    The unauthorized "Poppy Playtime Chapter 3" application further includes the phrases "**Poppy Playtime Chapter 3** MOB APK is a survival horror adventure game" "The biggest threat in the game… is a giant green hairy monster called **Huggy Wuggy**" (emphasis added). *Id.*

168.    The biggest threat in Mob Entertainment's "Poppy Playtime Chapter 1" is Huggy Wuggy, who is a giant blue hairy monster.

169.    The top of the main page of the "Poppy Playtime Chapter 4" application says "**PoppyPlaytime Mommy Long Legs** Fixes **Huggy Wuggy's** Among Biggest Problem." (emphasis added) Again, the text "PoppyPlaytime Mommy Long Legs" is in red text to attract the attention of the user. *See* Exhibit 6.

170.    The main page of the application further includes the phrases "The biggest threat in the game, also the terrible animal that caused the mysterious disappearance 10 years ago, is a giant green hairy monster called **Huggy Wuggy**," "**Poppy Playtime Chapter 4** is part 1 of the **Poppy Playtime** series" (emphasis added), and "In **Poppy Playtime Chapter 3**, you are truly heartbroken." (emphasis added). *Id.*

171.    The voluminous use of Mob Entertainment's marks is likely to confuse consumers into downloading the unauthorized "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" applications thinking they contain Mob Entertainment's games.

## Google and Daigo's Copyright Infringement

172.    Mob Entertainment owns the copyright to many works infringed by the Defendants, including "Poppy Playtime Chapter 2," "Poppy Playtime Chapter 3," and to the Characters shown in Table 1 (hereinafter "the Works").

173.    The unauthorized "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" applications contain many works copyrighted by Mob Entertainment.

174.    The unauthorized applications are stored in APK packages, which include the Works.

175.     For instance, in the unauthorized "Poppy Playtime Chapter 3" APK package, "/res/drawable/banner_1.png," "/res/drawable/banner_2.png," "/res/drawable/banner_3.png," "/res/drawable/banner_4.png," "/res/drawable/icon.png," "/res/drawable/img_1.png" and "/res/drawable/img_2.png" all contain works copyrighted by Mob Entertainment.

176.     In the unauthorized "Poppy Playtime Chapter 4" APK Package, "/res/drawable/banner_1.png," "/res/drawable/banner_2.png," "/res/drawable/banner_3.png," "/res/drawable/banner_4.png," "/res/drawable/icon.png," "/res/drawable/img_1.png" and "/res/drawable/img_2.png" all contain works copyrighted by Mob Entertainment.

177.     Upon information and belief, Daigo made copies of the Works and placed them into the unauthorized "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" APK packages.

178.     Upon information and belief, Daigo sent these APK packages containing the Works to Google.

179.     Upon information and belief, upon receiving Daigo's applications, Google made a copy of the Works by copying the APK packages to a hard drive controlled by Google.

180.     Upon information and belief, Google has reproduced the Works in copies at least by copying the Works onto their hard drives.

181.     Upon information and belief, Daigo knew that Google would reproduce the Works in copies at least by copying the works onto their hard drives.

182.     Upon information and belief, Daigo materially contributed to Google's infringement by sending it the APK packages.

183.     The unauthorized "Poppy Playtime Chapter 3" application has received over one million downloads according to the applications Google Play webpage. *See* Exhibit 3.

184.    The unauthorized "Poppy Playtime Chapter 4" application has received over 10,000 downloads according to the application's Google Play webpage. *See* Exhibit 4.

185.    Google has distributed over a million copies of the Works to the public by distributing the APK packages of the unauthorized applications to users who download the packages from Google Play.

186.    Google continues to distribute the Works to its Google Play users.

187.    Upon information and belief, Daigo knows that Google is distributing the copies of the Works.

188.    Daigo materially contributed to Google's distribution of the Works by providing it the APK packages containing the Works.

189.    Upon information and belief, Daigo controls the distribution of the Works by Google at least because Daigo could tell Google to stop distributing it.

190.    Upon information and belief, Daigo financially benefits from Google's distribution of the works, at least because it receives a portion of the payment that people who download the unauthorized application make.

191.    Google also distributes copies of the Works on the web pages of the unauthorized applications, where the Works are available for users to view and download.

192.    Upon information and belief, Daigo controls Google's distribution of the Works on the application pages, at least because he can tell Google to remove the application pages.

193.    Upon information and belief, Daigo financially benefits from Google's distribution of the Works on its webpage, at least because it encourages users to download the applications and Daigo receives a portion of the payment made by any users who download the applications.

194.    Upon information and belief, Daigo materially contributed to Google's distribution of the Works on the applications web pages by providing the screenshots to Google.

195.    Upon information and belief, Daigo knew of Google's distribution of the works on the applications' web pages.

196.    Google publicly displays the Works on the unauthorized applications' Play Store websites where a substantial number of users have been and are able to view the works. *See* Exhibit 3 and Exhibit 5.

197.    Upon information and belief, Daigo controls Google's public display of the Works, at least because it can tell Google to take the webpages down.

198.    Upon information and belief, Daigo financially benefits from Google's public display of the Works on its webpage, at least because the public display encourages users to download the applications and Daigo receives a portion of the payment made by any users who download the applications.

199.    Upon information and belief, Daigo materially contributed to Google's public display of the Works by supplying Google with screenshots depicting the Works.

200.    Upon information and belief, Daigo knew of Google's public display of the Works, at least because as the developer of the applications he visited the web pages.

201.    The over one million users who have downloaded the unauthorized versions of "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" has copied the Works onto their devices.

202.    Google materially contributed to the copying by the users at least by providing the users the APK packages containing the works.

203.    Google knew about the infringement by its users by October 31, 2024, at the latest, when Mob Entertainment sent Google a DMCA takedown notice. *See* Exhibit 8.

204.    Daigo materially contributed to the copying by the users by at least providing Google with the APK packages, who in turn provided them to the users.

205.    Upon information and belief, Daigo knew about the infringement by the users at least because it knowingly copied the copyrighted images in the APK packages and sent it to Google where it knew it would be distributed to users.

206.    Google controls the infringement by the users, at least because it could stop it by removing the applications. The Google Play Developer Distribution Agreement that "If your Product contains elements that could cause serious harm to user devices or data, Google reserves the right to disable the [application] or remove it from the devices on which it has been installed." Exhibit 1.

207.    Google receives a direct financial benefit from the infringement by the users at least because users with devices containing the application are given an offer to purchase the "Guide wuggy playtime mod" for up to $95. If they make the purchase, Google receives 15-30% of the proceeds. Exhibit 7.

208.    Daigo controls the infringement by the users, at least because it could stop it by removing the applications.

209.    Upon information and belief, Daigo receives a direct financial benefit from the infringement by the users, at least because it receives a portion of the payment said users make.

210.    When the users who have downloaded the APK packages from Google run the applications, the Works are copied from their devices' hard drive to their devices' RAM.

211.    Google controls the copying of the Works from the users' hard drives to the users RAM, at least because it has the ability to disable or remove the application from the users' devices. The Google Play Developer Distribution Agreement that "If your Product contains elements that could cause serious harm to user devices or data, Google reserves the right to disable the [application] or remove it from the devices on which it has been installed." Exhibit 1.

212.    Google financially benefits from users running this application and copying the Works from the user's hard drive to the user's RAM at least because users running the application are given an offer to purchase the "Guide wuggy playtime mod" for up to $95. If they make the purchase, Google receives 15-30% of the proceeds. Exhibit 7.

213.    Mob Entertainment sent a notification of claimed infringement of the unauthorized "Poppy Playtime: Chapter 3" application to Google's DMCA agent on December 19, 2024. Exhibit 14.

214.    The notification contained all or substantially all the requirements to be effective as a DMCA takedown notice.

215.    Google did not respond expeditiously to remove, disable access to, the material that is claimed to be infringing.

216.    Mob Entertainment sent a notification of claimed infringement of the unauthorized "Poppy Playtime: Chapter 4" application to Google's DMCA agent on December 30, 2024. Exhibit 16.

217.    The notification contained all or substantially all the requirements to be effective as a DMCA takedown notice.

218.    Google did not respond expeditiously to remove, or disable access to, the material that is claimed to be infringing.

219.    Google is not entitled to safe harbor protection under the DMCA for the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime Chapter 4" applications.

### Google's and Daigo's Unlawful, Unfair, and/or Fraudulent Business Practices

220.    Daigo has been developing scam applications using Google's services since at least February 2020 with the release of its Minicraft 2020 application.

221.    Daigo developed applications that are a scam on their face.

222.    Daigo sent the applications to Google, who made it available to millions of users.

223.    Daigo's Poppy Playtime Chapter 3 and Poppy Playtime Chapter 4 applications hold themselves out to be Mob Entertainment's video games.

224.    The Poppy Playtime applications developed by Daigo do not include a video game.

225.    The Poppy Playtime applications developed by Daigo include little more than artless, likely machine generated text with frequent grammatical errors, screenshots of Mob Entertainment's copyrighted works, and a link to spend up to $95 on the non-existent "Guide wuggy playtime mod."

226.    The most cursory of reviews of the Poppy Playtime applications submitted by Daigo should have led Google to realize that the Poppy Playtime applications are a scam.

227.    Daigo's history of using Google's services to distribute scam applications should have led Google to realize that every application it uploaded was a scam.

228.    The Google Play Developer Distribution Agreement states that "Google does not undertake an obligation to monitor the Products of their content." Exhibit 1.

229.    Upon information and belief, Google performed no review of the applications submitted by Daigo before making it available to millions of users.

230.    Upon information and belief, Google has a policy of willful blindness towards copyright infringement, trademark infringement, fraud, and other unlawful and unfair business acts and practices by the applications it offers on its Google Play platform.

231.    Google provides a form holding itself out to be a DMCA takedown notice. Exhibit 9.

232.    Upon information and belief, this sends an email to "removals@google.com," which is not Google's DMCA agent.

233.    Upon information and belief, Google directs copyright holders to send DMCA takedown notices to the "removals@google.com" email address instead of its

registered DMCA agent to avoid its requirement to takedown applications which engage in copyright infringement expeditiously under the DMCA.

234.    Over one month after receiving Mob Entertainment's notification, Google took down the "Poppy Playtime: Chapter 3" application. Exhibit. 11. The email informing Mob Entertainment stated that "This content violates our policies, so we're removing it from our services." *Id.*

235.    However, four days later, "Poppy Playtime: Chapter 3" application was available at the same link. Exhibit 13.

236.    The "Poppy Playtime: Chapter 3" application was still available on Google Play on January 15, 2025, when this lawsuit was filed.

237.    Upon information and belief, Google restored the "Poppy Playtime: Chapter 3" application knowing that it infringed Mob Entertainment's trademarks and copyrights, and scammed Google Play users.

238.    Mob Entertainment sent DMCA takedown notices to Google's DMCA agent. *See* Exhibit 14 and Exhibit 16.

239.    Google still did not take down the infringing applications. Instead, it directed Mob Entertainment to the form that had already proved to be fruitless.

240.    Upon information and belief, Google has created a difficult if not impossible labyrinth that copyright holders must navigate through to have infringing materials taken down.

241.    Upon information and belief, it is Google's policy not to take down infringing materials even when a copyright holder sends a proper DMCA takedown notice despite the labyrinth it has created.

### **Damage to Mob Entertainment**

242.    Upon information and belief, users looking for Mob Entertainment's Poppy Playtime games on the Google Play store were confused into downloading the unauthorized versions.

243.    Upon information and belief, Users searching for "Poppy Playtime Chapter 3" on Google Play before Mob Entertainment released it would only find the unauthorized version of "Poppy Playtime Chapter 3."

244.    Users searching for "Poppy Playtime Chapter 4" today only find the unauthorized version of "Poppy Playtime Chapter 4" as Mob Entertainment has not released the game yet.

245.    Upon information and belief, users were led to believe that Poppy Playtime games cost $30 to $95.

246.    Poppy Playtime games on Google Play cost a maximum of $4.99.

247.    Upon information and belief, Mob Entertainment has lost sales to customers who were led to believe that the games cost up to $95.

248.    Upon information and belief, Mob Entertainment has lost sales to customers who were led to believe that Poppy Playtime is a bait-and-switch scam, being offered for download for free but demanding a large payment for the non-existent "Guide wuggy playtime mod."

249.    The unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime Chapter 4" applications are of poor quality, with many grammatical mistakes, and an ugly color scheme.

250.    The unauthorized Poppy Playtime applications have tarnished Mob Entertainment's "Poppy Playtime" mark by associating it with poor quality applications that are nothing but bait-and-switch scams.

251.    Google's illegal, unfair, and fraudulent business acts and practices have caused Mob Entertainment to spend copious amounts of resources, including its employees' time, in a fruitless effort to attempt to get Google to remove applications committing copyright infringement, trademark infringement, fraud, and other unlawful and unfair business acts and practices.

## <u>Count I</u>

### <u>Trademark Infringement Under 17 U.S.C. § 1114</u>
### <u>(against all Defendants)</u>

252.    Mob Entertainment repeats and incorporates herein each of the preceding paragraphs.

253.    Mob Entertainment owns the registered trademark for "Poppy Playtime", U.S. Reg. No. 7,157,530.

254.    On the unauthorized "Poppy Playtime Chapter 3" and unauthorized "Poppy Playtime Chapter 4" webpage, Google used the "Poppy Playtime" mark in commerce to advertise the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime: Chapter 4" applications.

255.    Google's use of the "Poppy Playtime" mark is likely to cause confusion among consumers by causing them to confuse the authorized "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" applications with the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime: Chapter 4" applications.

256.    On the unauthorized "Poppy Playtime Chapter 3" and unauthorized "Poppy Playtime Chapter 4" webpage, Daigo used the "Poppy Playtime" mark in commerce to advertise the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime: Chapter 4" applications.

257.    Daigo's use of the "Poppy Playtime" mark is likely to cause confusion among consumers by causing them to confuse the authorized "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" applications with the unauthorized "Poppy Playtime: Chapter 3" and "Poppy Playtime: Chapter 4" applications.

258.    Google continued to supply its Google Play services to Google knowing or having reason to know that Daigo was engaging in trademark infringement.

259.    Mob Entertainment was damaged by the above-alleged infringement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Count II</u>
## <u>Trademark Infringement Under 17 U.S.C. § 1125</u>
## <u>(against all Defendants)</u>

260.    Mob Entertainment repeats and incorporates herein each of the preceding paragraphs.

261.    Mob Entertainment has valid and protectable trademarks in "Poppy Playtime," "Poppy Playtime: Chapter 3," "Poppy Playtime: Chapter 4," "Mommy Long Legs," and "Huggy Wuggy."

262.    On the unauthorized "Poppy Playtime Chapter 3" webpage, Google uses the "Poppy Playtime," "Poppy Playtime: Chapter 3," and "Huggy Wuggy" marks in commerce to advertise the unauthorized "Poppy Playtime: Chapter 3" application.

263.    Google's use of the marks is likely to cause confusion among consumers by causing them to confuse the authorized "Poppy Playtime Chapter 3" application with the unauthorized "Poppy Playtime: Chapter 3" application.

264.    On the unauthorized "Poppy Playtime Chapter 4" webpage, Google uses the "Poppy Playtime," "Poppy Playtime: Chapter 4," and "Huggy Wuggy" marks in commerce to advertise the unauthorized "Poppy Playtime: Chapter 3" application.

265.    Google's use of the marks is likely to cause confusion among consumers by causing them to confuse the upcoming "Poppy Playtime Chapter 4" video game with the unauthorized "Poppy Playtime: Chapter 4" application.

266.    Daigo used the marks "Poppy Playtime," "Poppy Playtime Chapter 3," "Mommy Long Legs,"  "Huggy Wuggy" and the image of Mommy Long Legs in the unauthorized "Poppy Playtime Chapter 3" application in commerce to advertise its "Guide wuggy playtime mod."

267.    Daigo used the marks "Poppy Playtime," "Poppy Playtime Chapter 4," "Mommy Long Legs," and "Huggy Wuggy" in the unauthorized "Poppy Playtime Chapter 4" application to advertise its "Guide wuggy playtime mod.".

268.    Daigo's use of the above marks is likely to cause confusion among consumers by causing them to confuse the games "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" with Daigo's application and "Guide wuggy playtime mod."

269.    Google continued to supply its services to Daigo knowing or having reason to know that Daigo was engaging in trademark infringement.

270.    Mob Entertainment has been damaged by the above actions.

### Count III

### Trademark Infringement under California Common Law
### (against all Defendants)

271.    Mob Entertainment repeats and incorporates each of the preceding paragraphs.

272.    For the reasons given in paragraphs 143-152, defendants Daigo and Google are liable for trademark infringement under California Common Law.

### Count IV

### Trademark Dilution Under 15 U.S.C. § 1125

273.    Mob Entertainment repeats and incorporates herein each of the preceding paragraphs.

274.    Mob Entertainment's "Poppy Playtime" and "Huggy Wuggy" marks are famous.

275.    Google and Daigo are making commercial use of the "Poppy Playtime" and "Huggy Wuggy" marks.

276.    Mob Entertainment's "Poppy Playtime" and "Huggy Wuggy" marks became famous before Google and Daigo begun using the mark.

277.    Google and Daigo's use of the "Poppy Playtime" and "Huggy Wuggy" marks caused and are causing actual harm to Mob Entertainment.

AMENDED COMPLAINT

## Count V

## Copyright Infringement Under 17 U.S.C. § 501 et seq.

278.    Mob Entertainment repeats and incorporates herein each of the preceding paragraphs.

279.    "Poppy Playtime Chapter 2," "Poppy Playtime Chapter"3," and the works shown in Table 1 are original works of Mob Entertainment and are protectable by the copyright laws of the United States.

280.    Mob Entertainment owns all rights and title to the copyrights for "Poppy Playtime Chapter 2," "Poppy Playtime Chapter 3" and the works shown in Table 1.

281.    Daigo violated Mob Entertainment's exclusive right under 17 U.S.C. § 106(1) "to reproduce the copyrighted work in copies" by copying the copyrighted works into the "Poppy Playtime Chapter 3" and "Poppy Playtime Chapter 4" APK packages.

282.    Google violated Mob Entertainment's exclusive right under 17 U.S.C. § 106(1) "to reproduce the copyrighted work in copies" by copying the copyrighted works onto a hard drive controlled by Google after receiving the APK packages from Daigo.

283.    Daigo materially contributed to Google's copying of the APK packages it received from Daigo by providing the APK packages to Google.

284.    Daigo knew that Google was going to copy the APK packages.

285.    Daigo is contributorily liable for Googles copying of the APK packages.

286.    Google violated Mob Entertainment's exclusive right under 17 U.S.C. 106(3) by "distributing copies of the copyrighted works to the public by sale or other transfer of ownership" buy distributing the APK packages containing the copyrighted works to Google Play users.

287.    Daigo materially contributed to Google's distribution of the copyrighted works by providing the APK packages to Google.

288.    Daigo knew of Google's distribution of APK packages containing the copyrighted works.

289.     Daigo is contributorily liable for Google's distribution of the APK packages.

290.     Daigo controlled Google's distribution of the APK packages containing the copyrighted works, at least because it could instruct Google to cease distributing the APK packages.

291.     Daigo received a direct financial benefit from Google's distribution of the APK packages containing the copyrighted works by being able to offer its "Guide wuggy playtime mod" in the applications which costs up to $95, the proceeds of which it would split with Google.

292.     Daigo is vicariously liable for Google's distribution of the APK packages containing the copyrighted works.

293.     Google violated Mob Entertainment's exclusive right under 17 U.S.C. 106(3) by "distributing copies of the copyrighted works to the public by sale or other transfer of ownership" by distributing screenshots of Mob Entertainment's "Poppy Playtime Chapter 2" and "Poppy Playtime Chapter 3" games on the Google Play Store website where visitors could download the screenshots.

294.     Daigo controlled Google's distribution of the screenshots containing the copyrighted works at least because it could instruct Google to take the screenshots down.

295.     Daigo received a direct financial benefit from Google's distribution of the screenshots containing the copyrighted works at least because the screenshots encouraged users to download the unauthorized applications, wherein they could pay up to $95 for the "Guide wuggy playtime mod.", the proceeds of which would be split between Google and Daigo.

296.     Daigo is vicariously liable for Google's distribution of the screenshots on its web pages.

297.     Daigo materially contributed to Google's distribution of the screenshots, at least by providing the screenshots to Google.

298.    Daigo knew that Google distributed the screenshots.

299.    Daigo is contributorily liable for Google's distribution of the screenshots.

300.    Google violated Mob Entertainment's exclusive right under 17 U.S.C. § 106(5) to "display the copyrighted work publicly" by displaying screenshots of Mob Entertainments copyrighted "Poppy Playtime Chapter 2" and "Poppy Playtime Chapter 3" videogames on its website.

301.    Daigo materially contributed to Google's display of Mob Entertainment's copyrighted works, at least by providing the screenshots to Google.

302.    Daigo knew that Google displayed the copyrighted works on Google's website.

303.    Daigo is contributorily liable for Google's display of Mob Entertainment's copyrighted works.

304.    Daigo controlled Google's display of Mob Entertainment's copyrighted works, at least because it could instruct Google to remove the screenshots.

305.    Daigo financially benefited from Google's display of Mob Entertainment's copyrighted works, at least because the display encouraged users to download the unauthorized applications, wherein they could pay up to $95 for its "Guide wuggy playtime mod," the proceeds of which would be split between Daigo and Google.

306.    Users who downloaded the APK packages from Google violated Mob Entertainment's exclusive right under 17 U.S.C. § 106(1) "to reproduce the copyrighted work in copies" by copying the copyrighted works from Google onto their device's hard drives.

307.    Google materially contributed to the users' copying of the APK packages onto their devices' hard drives by providing the APK packages to them.

308.    Google knew that its users were copying the APK packages it provided to them onto their device's hard drives.

309.     Google is contributorily liable for the users' copying of the APK packages onto their devices' hard drives.

310.     Daigo materially contributed to the users' copying of the APK packages onto their devices' hard drives by providing the APK packages to Google, who in turn provided them to the users.

311.     Daigo knew that the users were copying the APK packages onto their devices' hard drives.

312.     Daigo is contributorily liable for the users copying the APK packages onto their devices' hard drives.

313.     Users who ran the unauthorized applications on their devices violated Mob Entertainment's exclusive right under 17 U.S.C. § 106(1) "to reproduce the copyrighted work in copies" by copying the copyrighted works by causing their devices to copy the copyrighted works from their devices' hard drives to their devices' RAM.

314.     Google materially contributed to the users copying of the copyrighted works from their device's hard drive to their device's RAM by providing the APK packages containing the copyrighted works to its users.

315.     Google knew that its users were copying Mob Entertainment's works from their devices' hard drives to their devices' RAM.

316.     Google is contributorily liable for the user's copying of Mob Entertainment's copyrighted works from their devices' hard drives to their devices' RAM.

317.     Google controlled the users copying the copyrighted works from their devices' hard drives to their devices RAM as it has the right to disable the applications or remove it from the devices on which it has been installed.

318.     Google financially benefited from the copying of Mob Entertainment's works from their devices' hard drives to their devices' RAM by receiving a cut of the proceeds from users who purchased the "Guide wuggy playtime mod" while running the application.

319.     Daigo materially contributed to the users copying of the copyrighted works from their devices' hard drives to their devices' RAM by providing the APK packages containing Mob Entertainment's copyrighted work to Google, who in turn provided the APK packages to users.

320.     Daigo knew that Google's users were copying Mob Entertainment's works from their devices' hard drives to their devices' RAM.

321.     Daigo is contributorily liable for the users' copying of Mob Entertainment's works from their devices' hard drives to their devices' RAM.

322.     Google has controlled and financially benefited from the applications.

323.     Google did not expeditiously remove the applications upon receiving a takedown notice.

324.     Google's liability is not barred by the safe harbor provisions of the DMCA.

325.     Mob Entertainment has been damaged by the above-described actions.

## Count VI

## Unfair Competition Under California Business and Professional Code § 17200 (against all Defendants)

326.     Mob Entertainment repeats and incorporates herein each of the preceding paragraphs.

327.     By committing trademark infringement as described above, Daigo and Google have engaged in unlawful, unfair, and fraudulent business acts and practices.

328.     By committing, controlling, inducing, and benefitting from the Copyright infringement described above, Daigo and Google have engaged in unlawful, unfair, and fraudulent business acts and practices.

329.     By providing applications which attempt to scam users into paying up to $95 for a game which does not exist, Google and Daigo have engaged in unlawful, unfair, and fraudulent business acts and practices.

**AMENDED COMPLAINT**

330.    By providing a form holding itself out to generate a DMCA takedown notice that does not get directed to Google's DMCA agent as the DMCA requires, Google has engaged in an unfair and fraudulent business act and practice.

331.    By having a policy of providing no review of applications supplied by developers for copyright infringement, trademark infringement, fraud, and otherwise unlawful, unfair, and fraudulent business acts and practices prior to supplying the applications to its users, Google has engaged in unlawful, unfair, and fraudulent business acts and practices.

332.    By receiving a cut of the proceeds from in-app purchases from applications which enable copyright infringement, trademark infringement, fraud, and otherwise unlawful, unfair, and fraudulent business acts and practices, Google has engaged in unlawful, unfair, and fraudulent business acts and practices.

333.    By having a policy of providing little to no review of complaints sent by copyright holders in response to infringement allegations, Google has engaged in an unfair and fraudulent business act or practice.

334.    Mob Entertainment has been injured in fact and lost money due to the above-mentioned unlawful, unfair, and/or fraudulent business acts and practices.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mob Entertainment prays for relief as follows:

A.    For a judgment determining that Google and Daigo have infringed Mob Entertainment's registered "Poppy Playtime" mark in violation of 15 U.S.C. § 1114;

B.    For a judgment determining that Google and Daigo have infringed Mob Entertainment's trademarks in violation of 15 U.S.C. § 1125;

C.    For a judgment determining that Google and Daigo have infringed Mob Entertainment's trademarks in violation of California Common Law;

D.      For a judgment determining that Google and Daigo have diluted Mob Entertainment's famous trademarks in violation of 15 U.S.C. § 1125;

E.      For a finding that Google and Daigo have infringed Mob Entertainment's copyrights in violation of 17 U.S.C. § 501;

F.      For a finding that Daigo's and Google's copyright and trademark infringement was willful;

G.      For a judgement determining that Daigo and Google violated California Business and Professional Code § 17200;

H.      For a judgment preliminarily and permanently enjoining and restraining Daigo and Google, including their officers, directors, employees, agents, servants, and all those in active concert or participation with any of them, from directly or indirectly infringing Mob Entertainment's copyrights and trademarks;

I.      For a judgment preliminarily and permanently enjoining and restraining Daigo and Google, including their officers, directors, employees, agents, servants, and all those in active concert or participation with any of them, from directly or indirectly engaging in the above-described unlawful, unfair, or fraudulent business acts or practices;

J.      For a judgment awarding Mob Entertainment (i) its actual damages in an amount to be determined in excess of $75,000, (ii) any profits of Daigo and Google, (iii) statutory damages of $150,000 per work infringed, (iv) costs of this action including attorneys' fees pursuant to 17 U.S.C. §§ 504 and 505;

K.      For a judgment awarding Mob Entertainment (i) its actual damages in an amount to be determined in excess of $75,000, (ii) any profits of Daigo and Google, (iii) costs of this action including attorneys' fees pursuant to 15 U.S.C. § 1117;

L.      For a judgment ordering that Google and Daigo restore to Mob Entertainment any money or property which has been acquired by means of Google's and Daigo's unfair competition pursuant to Cal. Bus. And Prof. Code § 17203.

1

## **Demand for a Jury Trial**

2      Mob Entertainment hereby demands a trial by jury in this action.

3

4   Dated:  April 28, 2025                    HARNESS, DICKEY & PIERCE, P.L.C.
                                              JEREMIAH J. FOLEY
5

6                                             By: */s/ Jeremiah J. Foley*
                                                   Jeremiah J. Foley
7

8                                             HARRINGTON, FOXX, DUBROW &
                                              CANTER, LLP
9                                             Edward W. Lukas, Jr.

10                                            *Attorneys for Plaintiff*
                                              MOB ENTERTAINMENT, INC.
11

12   63577945.2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AMENDED COMPLAINT**