COOLEY LLP
BRENDAN J. HUGHES (DC Bar No. 497332) (*pro hac vice*)
(bhughes@cooley.com)
JESSICA M. WILLIAMS (CA Bar No. 341492)
(jwilliams@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:    (202) 842-7800
Facsimile:    (202) 842-7899

JUDD D. LAUTER (CA Bar No. 290945)
(jlauter@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

KAYLA E. BLAKER (DC Bar No. 177985) (*pro hac vice*)
(kblaker@cooley.com)
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone:    (720) 566-4000
Facsimile:    (720) 566-4099

Attorneys for Defendant
Google LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOB ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC and VAN PHUONG d/b/a DAIGO GAME 2020 INC.,<br><br>Defendants. | Case No. 3:25-cv-00531-CRB<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Judge:      Hon. Charles R. Breyer<br>Date:       June 20, 2025<br>Time:       10:00 AM<br>Location:   San Francisco<br>            Courtroom 6 – 17th Floor |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION. ................................................................................................. 1

II.   STATEMENT OF RELEVANT FACTS. ............................................................. 1

    A.    Google and Its Google Play Terms of Service. ........................................ 2

    B.    Plaintiff and Its Asserted Trademark Rights. .......................................... 2

    C.    Alleged Use of Plaintiff's Intellectual Property by Daigo. ..................... 2

    D.    Plaintiff Misdirects Its Trademark Infringement Claims at Google. ...... 3

III.  LEGAL STANDARD. ......................................................................................... 4

IV.   ARGUMENT. ...................................................................................................... 4

    A.    Plaintiff Fails to Sufficiently Plead Its Trademark Infringement Claims. .............. 4

        1.    Plaintiff Failed to Allege Use of Its Marks in Commerce by Google. ........ 4

        2.    Plaintiff Did Not and Cannot Demonstrate Contributory Infringement. ............... 7

        3.    Section 230 Shields Google from Liability for Plaintiff's UCL Claim. ............ 8

    B.    Plaintiff Fails to Plead Sufficient Facts in Support of Its Dilution Claim. ............. 9

        1.    Plaintiff Did Not and Cannot Demonstrate Fame of Each Alleged Mark. ............ 9

        2.    Plaintiff Did Not and Cannot Allege That Google Used Its Trademarks. ............ 13

    C.    Plaintiff's UCL Claim Fails Due to Section 230 and Its Underlying Claims. ...... 14

        1.    Section 230 Shields Google from Liability for Plaintiff's UCL Claim. ............ 14

        2.    Plaintiff's Claims Based on Unlawful Conduct Are Equally Untenable. ............ 14

        3.    Plaintiff's Allegations Based on Copyright Infringement Are Preempted. ............ 15

V.    CONCLUSION. ................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
    2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) .......................................................... 7

*Applied Info. Scis. Corp. v. eBay, Inc.*,
    511 F.3d 966 (9th Cir. 2007) ................................................................................ 5

*Arcsoft, Inc. v. CyberLink Corp.*,
    153 F. Supp. 3d. 1057 (N.D. Cal. 2015) ................................................ vi, 9, 11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4

*Avery Dennison Corp. v. Sumpton*,
    189 F.3d 868 (9th Cir. 1999) ............................................................................... 10

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .......................................................................... 8, 9

*Best Carpet Values, Inc. v. Google, LLC*,
    90 F.4th 962 (9th Cir. 2024) .............................................................................. 15

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ...................................................................... v, vi, 5

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ............................................................................. 8

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ......................................................................... vi, 14

*Divino Grp. LLC v. Google LLC*,
    2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ..................................................... 8

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ............................................................................. 8

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ....................................................................... vi, 8

*Free Kick Master LLC v. Apple Inc.* (*Free Kick Master I*),
    2016 WL 777916, at *3 (N.D. Cal. Feb. 29, 2016) ...................................... v, 5, 6

*Free Kick Master LLC v. Apple Inc.* (*Free Kick Master II*),
    140 F. Supp. 3d 975 (N.D. Cal. 2015) ..................................................... vi, 8, 9, 14

*H-D U.S.A., LLC v. Affliction Holdings, LLC*,
    2020 WL 5913850 (C.D. Cal. June 8, 2020) ...................................................... 10

**Page(s)**

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
633 F.2d 912 (9th Cir. 1980),
*cert. denied*, 452 U.S. 941 (1981) ....................................................................... v, 4

*Jurin v. Google Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010)................................................................. 6, 14

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
734 F. App'x 401 (9th Cir. 2018) ............................................................................. 9

*Kifle v. YouTube LLC*,
2022 WL 1501014 (N.D. Cal. May 12, 2022) ........................................................ 8

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020),
*aff'd*, 851 F. App'x 723 (9th Cir. 2021)................................................................... 8

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
658 F.3d 936 (9th Cir. 2011)................................................................................... 8

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017)............................................................................. vi, 15

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
2018 WL 2448123 (C.D. Cal. May 30, 2018) ......................................... 11, 12, 13

*Milo & Gabby LLC v. Amazon.com, Inc.*,
693 F. App'x 879 (Fed. Cir. 2017) .......................................................................... 6

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
686 F. Supp. 3d 900 (N.D. Cal. 2023) ................................................................... 10

*Nissan Motor Co. v. Nissan Comput. Corp.*,
378 F.3d 1002 (9th Cir. 2004)................................................................................ 10

*Perfect 10, Inc. v. Giganews, Inc.*,
2013 WL 2109963 (C.D. Cal. Mar. 8, 2013),
*aff'd*, 847 F.3d 657 (9th Cir. 2017)...................................................................... 5, 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007)................................................................................. v, 7

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
2019 WL 3082160 (S.D. Cal. July 15, 2019) ................................................... 14–15

*Pinterest, Inc. v. Pintrips, Inc.*,
140 F. Supp. 3d 997 (N.D. Cal. Oct. 21, 2015) .............................................. 10, 12

*Pratap v. Wells Fargo Bank, N.A.*,
63 F. Supp. 3d 1101 (N.D. Cal. 2014) ................................................................... 14

TABLE OF AUTHORITIES

Page(s)

*Sellify Inc. v. Amazon.com, In*c.,
   2010 WL 4455830 (S.D.N.Y. Nov. 4, 2010) ............................................................ 5

*Spy Phone Labs LLC. v. Google Inc*.,
   2016 WL 1089267 (N.D. Cal. Mar. 21, 2016) ......................................................... 7

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
   212 F. Supp. 3d 816 (N.D. Cal. 2016) ................................................................... 10

*Tiffany (NJ) Inc. v. eBay Inc*.,
   600 F.3d 93 (2d Cir. 2010) ...................................................................................... 7

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
   2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) .......................................................... 13

*YZ Prods., Inc. v. Redbubble, In*c.,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) ..................................................................... 7

**Statutes**

15 U.S.C.
   § 1114 ....................................................................................................................... 5
   § 1125 ................................................................................................. 5, 10, 12, 13

17 U.S.C.
   § 301(a) ................................................................................................................... 15

47 U.S.C.
   § 230 .................................................................................................................... v, 14

California Business and Professional Code § 17200 (UCL) ........................................ 14

**Other Sources**

3 McCarthy on Trademarks and Unfair Competition § 25:26 ..................................... 5

## NOTICE OF MOTION & MOTION TO DISMISS

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 20, 2025, at 10:00 AM, in the U.S. District Court for the Northern District of California in Courtroom 6, 17th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves this Court for an order partially dismissing the Amended Complaint filed by Plaintiff Mob Entertainment, Inc. ("Mob Entertainment" or "Plaintiff") on April 28, 2025 (Dkt. No 35) (the "AC"). Google bases its motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this matter, oral argument of counsel, and such other materials and arguments as may be presented in connection with the hearing of the motion.

## SUMMARY OF ARGUMENT

Rather than focus on confronting the true source of its alleged infringement—developer Daigo Game 2020 Inc. ("Daigo")—Plaintiff pursues meritless trademark and unfair competition claims against Google, which had no role in creating the disputed content that Google has since removed from its Google Play store. Despite Plaintiff's attempt to cure the deficiencies in its initial complaint through amendment, its claims in the Amended Complaint still fail.

Plaintiff's direct and contributory trademark infringement claims against Google are baseless. Google did not "use" the alleged trademarks in commerce, a threshold requirement for direct trademark infringement. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005); *Free Kick Master LLC v. Apple Inc.*, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016). Nor can Plaintiff demonstrate that Google had knowledge of Daigo's alleged trademark infringement, a prerequisite for contributory infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). Plaintiff's California common law trademark infringement claims fare no better, as they are indistinguishable from the federal claims and are therefore similarly deficient. *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) (citing cases), *cert. denied*, 452 U.S. 941 (1981)). Additionally, those claims are barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230"), which shields interactive service providers like Google

from liability for third-party actions. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).

Plaintiff's trademark dilution claim also fails outright. Plaintiff has not pleaded—and cannot plead—facts sufficient to establish the fame of the alleged trademarks, as required to sustain a trademark dilution claim. *Arcsoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. 2015). Moreover, even if the requisite fame were established, Google did not "use" the alleged marks in commerce. *Bosley*, 403 F.3d at 676. Plaintiff's inability to meet these criteria mandates dismissal of the dilution claim with prejudice.

Finally, Plaintiff's unfair competition claim under California law is equally unavailing. Section 230 grants Google immunity because the claim is based on content provided by a third party, Daigo. *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 980 (N.D. Cal. 2015). In addition, the unfair competition claim is tied in part to Plaintiff's failed trademark infringement allegations, rendering it untenable. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). The Copyright Act also preempts any unfair competition claim that falls "within the scope of the Federal copyright law," warranting dismissal. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citation omitted).

## STATEMENT OF REQUESTED RELIEF

Google seeks an order dismissing with prejudice the following claims against Google: (a) Plaintiff's trademark infringement claims (Counts I, II, and III); (b) Plaintiff's trademark dilution claim (Count IV); and (c) Plaintiff's unfair competition claim (Count VI).

I.    **INTRODUCTION.**

Plaintiff's assertion that its Amended Complaint ("AC") would render Google's Partial Motion to Dismiss (Dkt. No. 24) moot did not come to fruition. The deficiencies persist. As before, Plaintiff improperly attributes the actions of game developer Daigo to Google, ignoring Google Play's role as passive digital content store. Nothing in the AC—which still relies on vague and unsupported allegations—runs counter to the fact that Daigo alone is responsible for the allegedly infringing content. Despite its efforts, Plaintiff did not and cannot plead facts to support its trademark and unfair competition-related claims against Google.

*First*, all of Plaintiff's trademark infringement claims are fundamentally flawed. Google never "used" the trademarks at issue in commerce; Plaintiff is trying to hold Google liable for actions plainly taken by Daigo. The state common law trademark infringement claims are similarly deficient. Furthermore, Plaintiff cannot allege that Google induced Daigo to infringe or was aware of the purported trademark infringement, thus failing to establish liability under a contributory infringement theory. If not dismissed with the federal claims, the state claims should be dismissed under Section 230, which immunizes service providers like Google from such claims.

*Second*, Plaintiff's trademark dilution claims remain untenable, even with the AC's new allegations. Plaintiff has not pleaded facts to show that the trademarks at issue meet the threshold requirement for trademark dilution, a cause of action reserved for a select group of famous marks.

*Third*, Plaintiff's unfair competition claim continues to fail because: (a) Google is shielded from liability under Section 230 of the CDA; (b) the claim is inseparably tied to Plaintiff's defective trademark infringement claims; and (c) to the extent its allegations are based on copyright infringement, those are preempted by federal copyright law.

For the foregoing reasons, Google respectfully requests that the Court dismiss Plaintiff's trademark and unfair competition-related claims against Google with prejudice.

II.    **STATEMENT OF RELEVANT FACTS.**

The factual allegations concerning Google in the AC largely mirror those in the Complaint and are set out for the Court again below.

1

### A.     Google and Its Google Play Terms of Service.

The Google Play store is a global digital content store through which third-party developers make their applications available to consumers for download. App developers must accept the terms of the Google Play Developer Distribution Agreement before an app can be offered through Google Play. *See* Dkt. No. 35-1. These terms refer to Google's intellectual property takedown policy, which sets out procedures concerning violations of intellectual property that take place in the store. *Id.* at § 4. The takedown procedures for trademark and copyright violations are distinct. Dkt. No. 35-19.

### B.     Plaintiff and Its Asserted Trademark Rights.

Plaintiff offers video game applications that are distributed via various digital content stores, including Google Play. ¶¶ 10–12.[1] Plaintiff launched its first video game, *Poppy Playtime*, in October 2021. ¶¶ 11, 13. In March 2022 and January 2024, Plaintiff released Chapters 2 and 3, respectively, in the video game series. ¶ 13. The games have introduced consumers to a variety of characters, including "Huggy Wuggy" in Chapters 1 and 3, ¶ 36, and "Mommy Long Legs" in Chapter 2. ¶ 46. Plaintiff charges users $4.99 to download its app. ¶¶ 72, 246.

Plaintiff alleges that it owns rights in the POPPY PLAYTIME and HUGGY WUGGY marks, and that those marks are famous. *See* ¶¶ 15, 20–22, 33, 41–43, 274, 276. In support of the alleged fame of these marks, Plaintiff claims, without any evidentiary support, that the games have over 41 million players worldwide and over 100 billion views on YouTube.[2] ¶¶ 23, 26. Plaintiff also cited an online article about children being fans of Huggy Wuggy. ¶¶ 38–44. Contrary to its allegations of fame, the facts reveal that interest in Plaintiff's *Poppy Playtime* series waned with each successive release, with 500K+ downloads for the first chapter, but only 100K+ for the second chapter. ¶ 14. This 80% decrease occurred before any of the alleged infringing conduct detailed in the AC. The total Google Play downloads across all three of Plaintiff's games is around 600K. *Id.*

### C.     Alleged Use of Plaintiff's Intellectual Property by Daigo.

Daigo, like Plaintiff, distributes its apps on the Google Play store. ¶ 3. On either October 13, 2023, or July 13, 2023, Daigo posted an app purporting to be *Poppy Playtime: Chapter 3* on

---

[1] Unless otherwise specified, ¶ refers to the numbered paragraphs in the AC.

[2] Plaintiff does not distinguish viewer from view count or offer data about where these viewers are located—e.g., in or outside the U.S.

GOOGLE'S NOTICE OF MOTION AND
PARTIAL MOTION TO DISMISS AC
CASE NO.: 3:25-CV-00531-CRB

Google Play. ¶ 76; Dkt. No. 35-3. On October 15, 2024, it posted an app purporting to be *Poppy Playtime: Chapter 4* on Google Play. ¶ 80. Daigo did not charge consumers to download either app that it offered under the POPPY PLAYTIME mark (collectively, the "Daigo Apps"). ¶ 70.

According to Plaintiff, the Diago Apps contain images that infringe Plaintiff's copyrighted works. ¶¶ 59–62, 66–68; Dkt. No. 35-4. Plaintiff does not indicate when it became aware of the Daigo Apps, but claims to have submitted copyright takedown notices concerning Daigo's infringing uses to Google in one format or another from October-December 2024. ¶¶ 111–50.

Plaintiff also claims the Daigo Apps used Plaintiff's alleged POPPY PLAYTIME, HUGGY WUGGY, and MOMMY LONG LEGS marks because the Daigo Apps are called *Poppy Playtime*, and the descriptions reference the Huggy Wuggy and Mommy Long Legs characters. ¶¶ 155–71.

### D.    Plaintiff Misdirects Its Trademark Infringement Claims at Google.

As stated in the AC, Daigo developed the Daigo Apps, and Daigo made its application software and pages featuring additional information about those applications available to consumers via the Google Play store. ¶¶ 221–22. In other words, Daigo made its software available in the Google Play store in the same way that Plaintiff did. *Compare* ¶ 222 *with* ¶ 12.

Despite this clearly defined relationship between Google and app developers, Plaintiff contends that Google is somehow involved in the alleged trademark infringement occurring at Daigo's hand through the Daigo Apps. For example, Plaintiff asserts that "Google's website uses the marks 'Poppy Playtime', 'Poppy Playtime Chapter 3,' 'Poppy Playtime Chapter 4,' and 'Huggy Wuggy' in commerce to encourage Google Play users to download the unauthorized 'Poppy Playtime: Chapter 3' and 'Poppy Playtime Chapter 4' applications it has available on the Google Play Store."[3] ¶ 156. Plaintiff also alleges that displaying search results and application listings is trademark infringement. ¶ 157 (The text of this invisible paragraph of the AC is set forth in footnote 4,[4] and the partially obscured image is reproduced on page 6 below.)

---

[3] Plaintiff alleges trademark rights in POPPY PLAYTIME: CHAPTER 3 and POPPY PLAYTIME: CHAPTER 4 as distinct from POPPY PLAYTIME. Throughout this motion, any reference to POPPY PLAYTIME also incorporates POPPY PLAYTIME: CHAPTER 3 and POPPY PLAYTIME: CHAPTER 4 to the extent Plaintiff considers those to be separate marks.

[4] "When users search 'Poppy Playtime' in Google Play, the unauthorized 'Poppy Playtime Chapter 3' and 'Poppy Playtime Chapter 4' applications appear in the results just below Mob Entertainment's authorized applications. A screenshot of these results is shown below." ¶ 157.

Based on its pleading, Plaintiff did not submit any notice to Google concerning its alleged rights in any of its alleged trademarks or concerning any use by Daigo of the same. This is because the Complaint was the first notice Google received of Plaintiff's trademark claims.

### III.    LEGAL STANDARD.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### IV.    ARGUMENT.

The question before this Court is whether Plaintiff alleged sufficient facts in the AC which, if taken as true, establish plausible claims for trademark infringement (Counts I, II, and III), trademark dilution (Count IV), and unfair competition (Count VI). Even with its amendments, Plaintiff has not and cannot do so; thus, the Court should dismiss the claims with prejudice.

#### A.    Plaintiff Fails to Sufficiently Plead Its Trademark Infringement Claims.

Plaintiff's trademark infringement claims under federal and California law are fundamentally flawed. As detailed below, the claims fail because Google did not "use" the alleged trademarks at issue in commerce, a prerequisite for direct infringement. Moreover, Plaintiff cannot demonstrate Google's knowledge of the alleged infringement, which is required for contributory liability. The state law claim also is barred by Section 230 of the CDA. In essence, and on the whole, Plaintiff advances untenable legal claims to try to hold Google liable for Daigo's actions.

#### 1.    Plaintiff Failed to Allege Use of Its Marks in Commerce by Google.

To establish a direct trademark infringement claim[5] against Google under 15 U.S.C. §§ 1114 or 1125, or California common law, Plaintiff must sufficiently allege, among other things, that Google "uses" Plaintiff's alleged marks in commerce on or in connection with a good or service

---

[5] "[F]ederal and state laws regarding trademarks . . . are substantially congruent. . . . Therefore the choice of federal or state law frequently has no impact on the outcome, leading courts to avoid the issue." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980), *cert. denied*, 452 U.S. 941 (1981).

in a manner that is likely to cause confusion.[6] 15 U.S.C. §§ 1114(1), 1125(a)(1); *see Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005); *see also Applied Info. Scis. Corp. v. eBay, Inc*., 511 F.3d 966, 969 (9th Cir. 2007). "Direct infringement requires that the defendant itself 'use' the mark; it is insufficient for direct infringement purposes to allege that a defendant allows third parties to use the mark." *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (dismissing a direct trademark infringement claim based on the defendant providing access to an online forum); *see also Sellify Inc. v. Amazon.com, In*c., 2010 WL 4455830, at *2 (S.D.N.Y. Nov. 4, 2010). Thus, "'passive' online marketplaces . . . that facilitate sales of independent vendors . . . usually escape liability for direct trademark infringement." 3 McCarthy on Trademarks and Unfair Competition § 25:26 (5th ed.).

For example, in *Free Kick Master LLC v. Apple Inc*. (*Free Kick Master I*), the Northern District of California considered a motion to dismiss direct infringement claims against Apple for infringing content that was sold in its App Store. 2016 WL 777916, at *3 (N.D. Cal. Feb. 29, 2016); *Free Kick Master LLC v. Apple Inc*. (*Free Kick Master II*), 140 F. Supp. 3d 975, 982 (N.D. Cal. 2015) (noting plaintiff could not state a claim of direct infringement for a third party's use on Google Play). The issue was whether Apple "used" a mark in commerce through its App Store where, like Google Play, third-party developers distribute their offerings. *Free Kick Master I*, 2016 WL 777916, at *8–10. There, the plaintiff contended that it sufficiently pleaded "use in commerce" because, among other reasons: (i) its explicit inclusion of the term "use" in its complaint; (ii) Apple requires apps to meet certain guidelines to be included in the App Store, so it "should have known" of infringing content; and (iii) Apple hosted and sold the infringing apps—even if the content did not originate with Apple. *Id.* at *8–9. The Court dismissed the claim because "plaintiffs' claims . . . are all premised on apps that plaintiffs concede were developed by 'third-party developers,' rather than by Apple." *Id.* at *10.

The same is true here. Daigo—not Google—developed the Daigo Apps. ¶ 221. Unlike in

---

[6] This standard applies equally for both registered and unregistered trademarks. Plaintiff entitles Count I as "Trademark Infringement Under 17 U.S.C. § 1114" and Count II as "Trademark Infringement Under 17 U.S.C. § 1125"; Google interprets these as pleadings under 15 U.S.C. § 1114(1) and 1125(a), respectively.

1    *Free Kick Master I*, Plaintiff does not allege that the Daigo Apps were created using Google

2    software, nor could it. Thus, the developer-distributor relationship between Daigo and Google is

3    even weaker than in *Free Kick Master I* where this Court found no direct infringement.

4        As in *Free Kick Master I*, Plaintiff cannot skirt pleading requirements with conclusory

5    allegations that the display of the asserted trademarks on the Google Play store constitutes "use" of

6    the marks in commerce. *Id*. at *10. What Plaintiff refers to as "Google's website" are webpages

7    displaying images of and text about apps available on Google Play. ¶¶ 158–70. A third party (here,

8    Daigo) provides those images and text, not Google. Thus, this activity does not amount to direct

9    trademark infringement by Google. *See Giganews*, 2013 WL 2109963, at *14; Dkt. No. 35-3. As

10   with other online distribution platforms that have not been found directly liable for trademark

11   infringement on their platform, Google "did not control what information or pictures were put on

12   the product-detail page"; rather, it "merely provided an online marketplace that third-party sellers

13   could use to sell their products[.]" *See Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879,

14   886–87 (Fed. Cir. 2017).

15       Plaintiff also alleges that Google uses the POPPY PLAYTIME and HUGGY WUGGY

16   marks on its Google Play store when search results are displayed, as depicted below.



25   ¶ 157. Every so-called "use" that Plaintiff alleges in the AC is a display of content provided and

26   created by a third party. *See Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010), *see*

27   *also id.* at 1121–22 ("Defendant [Google] has in no way directly represented that it is the producer

28   of the . . . product [listed in search results]."). Because Google did not use Plaintiff's alleged marks

1    in commerce, the trademark infringement claims should be dismissed with prejudice.

2          **2.    Plaintiff Did Not and Cannot Demonstrate Contributory Infringement.**

3          Although not explicitly pleaded, Plaintiff's allegations suggest that it intended to bring a

4    contributory trademark infringement claim. Even if Plaintiff had, such a claim is fatally flawed.

5          For liability to attach under contributory infringement, "a defendant must have (1)

6    intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing

7    product to an infringer with knowledge that the infringer is mislabeling the particular product

8    supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (cleaned up).

9    "In the specific context of an online marketplace, a service provider must have more than a general

10    knowledge or reason to know that its service is being used to sell counterfeit goods. Some

11    contemporary knowledge of which particular listings are infringing or will infringe is necessary."

12    *Spy Phone Labs LLC v. Google Inc*., 2016 WL 1089267, at *3 (N.D. Cal. Mar. 21, 2016) (quoting

13    *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 107 (2d Cir. 2010)) (cleaned up); *see Acad. of Motion

14    Picture Arts & Scis. v. GoDaddy.com, Inc*., 2015 WL 5311085, at *52 (C.D. Cal. Sept. 10, 2015)

15    (explaining that general awareness of inevitable infringement does not meet the particular

16    knowledge requirement) (citing *Tiffany (NJ)*, 600 F.3d at 107). Furthermore, "[n]otice of certain

17    acts of infringements does not imply generalized knowledge of—and liability for—others." *YZ

18    Prods., Inc. v. Redbubble, In*c., 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021) (quoting *Spy Phone

19    Lab*s, 2016 WL 1089267, at *3) (finding allegations of trademark infringement generally

20    insufficient for "particularized knowledge" of specific infringing listings) (alteration in original).

21          In the AC, Plaintiff again failed to plead facts sufficient to maintain a contributory

22    trademark infringement claim against Google. Plaintiff did not and cannot show that Google

23    intentionally induced Daigo to infringe Plaintiff's trademark rights. In fact, there is no allegation

24    that Google ever communicated with Daigo about the alleged trademarks in the Daigo Apps. Thus,

25    it is factually impossible that Google induced Daigo to infringe Plaintiff's alleged trademark rights.

26          Plaintiff also still did not and—no matter how many times it amends—cannot allege that it

27    ever notified Google that the Daigo Apps infringed Plaintiff's trademark rights prior to filing the

28    Complaint on January 15, 2025. While Plaintiff notified Google that the Daigo Apps infringed

**GOOGLE'S NOTICE OF MOTION AND
PARTIAL MOTION TO DISMISS AC
CASE NO.: 3:25-CV-00531-CRB**

Plaintiff's alleged copyrights, its notices were devoid of any mention of trademark infringement. Plaintiff therefore cannot allege that Google had the "particularized knowledge" necessary to sustain a contributory trademark infringement claim. *See Kifle v. YouTube LLC*, 2022 WL 1501014, at *3 (N.D. Cal. May 12, 2022) (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc*., 658 F.3d 936, 942 (9th Cir. 2011). Accordingly, this claim should be dismissed with prejudice.

### 3. Section 230 Shields Google from Liability for Plaintiff's UCL Claim.

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties[.]" *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (footnotes omitted). Section (c)(1) of the CDA shields some defendants from liability of "all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009). This immunity is considered "quite robust" in the Ninth Circuit. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). A defendant is entitled to Section 230 "protection so long as (1) it is a provider or user of an 'interactive computer service,' (2) the asserted claims 'treat the defendant as a publisher or speaker of information,' and (3) the challenged communication is 'information provided by another content provider.'" *Free Kick Master II*, 140 F. Supp. 3d at 980 (internal citation omitted). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1097 (9th Cir. 2019). Google meets all three criteria.

**(1) *Google provides interactive computer services*.** As alleged in the AC, Google offers an application store, Google Play, through which consumers in the U.S. can download and purchase applications. *See, e.g.*, ¶¶ 54–55, 191. This first element is satisfied both on the face of the pleadings and from prior case law deciding this issue. *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Divino Grp. LLC v. Google LLC*, 2022 WL 4625076, at *16 (N.D. Cal. Sept. 30, 2022).

**(2) *Plaintiff's infringement claim treats Google as the publisher of the information*.** Under the CDA, a "publisher" may be defined as "'the reproducer of a work intended for public consumption' and also as 'one whose business is publication.'" *Barnes*, 570 F.3d at 1102 (internal

citations omitted). In its claims, Plaintiff asserts that there is commercial use because Google made the Daigo Apps available on Google Play. Plaintiff also acknowledges that Google distributes Daigo's applications for users to download. Plaintiff thus treats Google as the publisher of Daigo's infringing content.

(3) *The information is provided by another content provider.* Plaintiff pleads that Daigo, not Google, developed the "scam application," provided copies of the allegedly infringing works to Google, and titled the works using the alleged trademarks. *See* ¶¶ 220–23. Plaintiff also alleged that "Google performed no review of the applications submitted by Daigo before making it available to millions of users." ¶ 229.

"In the absence of any allegation that . . . Google acted as an author of the challenged content—e.g., that . . . Google chose the names of the products, wrote any of the code, or provided encouragement or assistance in the allegedly infringing use of plaintiff's mark on the products, or that either had notice that the third-party use was unlicensed and infringing—§ 230 immunity applies." *Free Kick Master II*, 140 F. Supp. 3d at 983.

Even as amended, Plaintiff has not pleaded facts that support Google's liability for trademark infringement. Accordingly, its common law trademark infringement claims must fail.

**B.    Plaintiff Fails to Plead Sufficient Facts in Support of Its Dilution Claim.**

Plaintiff alleges that Google diluted its alleged POPPY PLAYTIME and HUGGY WUGGY trademarks, yet fails to state sufficient facts in support of its claims. "To prevail on a dilution claim, 'a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use is likely to cause dilution by blurring or dilution by tarnishment.'" *Arcsoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. 2015) (internal citation omitted). Plaintiff's dilution should be dismissed with prejudice for failing to allege these four elements.

**1.    Plaintiff Did Not and Cannot Demonstrate Fame of Each Alleged Mark.**

A claim for trademark dilution is reserved for famous marks. *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 407 (9th Cir. 2018). A mark is famous only if it is "widely

recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Trademark dilution claims are "reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (citation omitted). To be famous, "a mark must be truly prominent and renowned." *Id.* (cleaned up).

For a dilution claim to stand, each mark must be shown to be diluted on its own. *H-D U.S.A., LLC v. Affliction Holdings, LLC*, 2020 WL 5913850, at *5 (C.D. Cal. June 8, 2020). Therefore, even if Plaintiff could demonstrate the requisite fame for the POPPY PLAYTIME mark, which it cannot, this would not satisfy the fame requirement for dilution of the HUGGY WUGGY mark.

To determine whether a plaintiff's mark has the requisite fame, courts consider the following factors: "(i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark[;] (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) [t]he extent of actual recognition of the mark [; and] (iv) [w]hether the mark was registered[.]" 15 U.S.C. § 1125(c)(2)(A). In applying these factors, the Ninth Circuit has concluded that a plaintiff must establish fame to the degree that the mark is a "household name," and nothing less. *Nissan Motor Co. v. Nissan Comput. Corp.*, 378 F.3d 1002, 1010–11 (9th Cir. 2004) (citation omitted). This is a "high standard," which is difficult to prove. *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1033 (N.D. Cal. Oct. 21, 2015) (explaining that "even very old and commercially successful marks" have been found as insufficiently famous under § 1125(c)).

It is not enough for Plaintiff to merely state that its mark is a "household name," it must allege relevant facts to meet the elements under 15 U.S.C. § 1125(c)(2). *Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 828–29 (N.D. Cal. 2016) ("[P]laintiff's allegation regarding 'a high level of actual recognition among the consuming public' is simply a formulaic recitation of part of the dilution statute and the court need not rely on it.") (citation omitted); *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 916 (N.D. Cal. 2023) (plaintiff "must plead more than conclusory allegations of fame to survive a motion to dismiss"). Considering the factors, Plaintiff's conclusory and sweeping allegations of fame are insufficient.

**(i) *Advertising and Publicity.*** Plaintiff does not describe any marketing efforts for the POPPY PLAYTIME or HUGGY WUGGY marks beyond use on its YouTube page. Noticeably, even post-amendment, the AC is devoid of any specificity concerning Plaintiff's advertisements using the HUGGY WUGGY mark. Plaintiff merely states that it used the POPPY PLAYTIME mark "to advertise its video games and related goods," ¶ 15, "includes the term 'Poppy Playtime' in the titles to its video games," ¶ 16, and "uses the mark "Poppy Playtime" in commerce to advertise and sell licensed merchandise." ¶ 19.

Attempting to address the dearth of details in the Complaint, Plaintiff provides some additional color about the alleged fame of its marks in the AC. Plaintiff alleges that "Poppy Playtime content has received over 100 billion views on YouTube," ¶ 26, but does not specify whether this number reflects the number of individual viewers (certainly much lower than 100 billion), the views from Plaintiff's YouTube channel, or some other aggregation of sources. Plaintiff fails to specify whether the imprecisely described "content" that received those views was published by Plaintiff or a third party. Plaintiff also pleads that eight million of the *Poppy Playtime* players are located in the U.S., and that 120 million views—not viewers—of all of the Mob Entertainment YouTube channel videos—not merely its *Poppy Playtime* videos—came from the U.S. ¶¶ 23, 25. For context, Plaintiff's YouTube channel has just "four million subscribers." ¶ 24.

Such allegations are insufficient to plausibly support Plaintiff's broad claims of fame. Courts in this circuit have found that even advertising efforts and marketing expenditures of over one million dollars are insufficient to demonstrate fame. *See, e.g.*, *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, 2018 WL 2448123, at *6 (C.D. Cal. May 30, 2018) (the fact that Plaintiff "spent millions of dollars to develop, build, and promote" the product was insufficient); *Arcsoft*, 153 F. Supp. 3d at 1065–67 (finding "advertising, marketing, promoting, offering, and providing . . . app through multiple electronic platforms and websites and 'throughout the geographic extent of the United States'" insufficient). Despite adding some facts in the AC, Plaintiff still fails to meet the high standard for fame, and provides nothing in support of its marketing spend or efforts to date.

Furthermore, Plaintiff alleges a single example of publicity in the Complaint, an article from an online news outlet called *Screen Rant*. ¶ 38. One article from an online entertainment publication

1    does little to support the conclusion that POPPY PLAYTIME and HUGGY WUGGY are both
2    famous. *See Arcsoft*, 153 F. Supp. 3d. at 1065–67 (finding insufficient pleading of fame
3    notwithstanding allegations that Plaintiff was "featured, recognized, and/or mentioned in 'many of
4    the most famous and widely-circulated publications in the United States'" and used by celebrities).
5    Indeed, even the *Screen Rant* writer hints at the growing—as opposed to well-established—fame
6    of the POPPY PLAYTIME mark and its Huggy Wuggy character: "The *new* indie horror title
7    Poppy Playtime has swept the internet, and kids have unexpectedly fallen in love with its popular
8    main monster, Huggy Wuggy." ¶ 38 (emphasis added). But a niche publication targeted at a
9    particular audience describing a character as "popular" does not equate to a mark being "famous"
10   under the trademark dilution standard. Plaintiff's advertising and publicity allegations are thus
11   insufficient to support a finding of fame for dilution.

12       **(ii) *Amount, Volume, and Geography.*** Plaintiff alleges that the three games offered under
13   the POPPY PLAYTIME mark have been downloaded only about 600,000 times on Google Play,
14   *see* ¶ 14, and reviewed on Steam only about 74,000 times. ¶ 12. Neither allegation specifies what
15   proportion is attributable to U.S. customers. Plaintiff further alleges that its game has 40 million
16   players worldwide with only 8 million of those players in the U.S ¶ 23. Only allegations regarding
17   U.S. fame are relevant to a dilution claim. 15 U.S.C. § 1125(c)(2)(A).

18       Even if all of the players, downloads, and reviews were from the U.S., which is unlikely
19   based on Plaintiff's self-proclaimed "global success," ¶ 13, its self-reported numbers are
20   insufficient to rise to the level of fame sufficient for a dilution claim. *See Arcsoft*, 153 F. Supp. 3d
21   at 1065–66 (finding that a web app with over 60 million downloads globally and 20 million
22   downloads in the U.S. was not famous); *Pinterest*, 140 F. Supp. 3d at 1033 (finding that 1 million,
23   5 million, and even 25 million monthly users does not "come[] close to suggesting that Pinterest
24   had attained the level of prominence necessary for a brand to become part of the collective national
25   consciousness"); *MGA Ent.*, 2018 WL 2448123, at *6 (finding more than 10 million total sales
26   insufficient). Neither Plaintiff's alleged eight million U.S. players nor the sub-one million
27   downloads from Google Play satisfies the requisite high level of fame necessary to support a
28   trademark dilution claim for its POPPY PLAYTIME mark.

Plaintiff also fails to provide any support related to its allegation of fame for the HUGGY WUGGY mark. Instead, Plaintiff asserts that the "Huggy Wuggy character has become massively popular," ¶ 37, and that "Huggy Wuggy [the character] has become an iconic symbol of the Poppy Playtime games." ¶ 39. However, popularity of a character does not demonstrate the fame of a trademark. Plaintiff also does not provide sales or marketing data for the HUGGY WUGGY mark.

**(iii)** *Recognition of the Marks.* There are no specific allegations that support the nationwide recognition of any of Plaintiff's alleged trademarks. Rather, as with the other elements, Plaintiff summarily pleads that POPPY PLAYTIME has become a "household name," ¶ 33, that HUGGY WUGGY "has become a household name and the general public identifies [the mark] with [the games]," ¶ 43, and that its Huggy Wuggy character—not its trademark—is "popular" and "an iconic symbol" because one person wrote an article saying so. ¶¶ 39–40. There are no further relevant allegations of consumer recognition to support a finding of fame.

**(iv)** *Registration of the Marks.* Plaintiff owns a U.S. trademark registration for POPPY PLAYTIME in Classes 25 (apparel) and 41 (online computer games), but still fails to plead that it owns a registration for HUGGY WUGGY. Regardless, a registration alone is not conclusive evidence of fame, and it is hardly sufficient to overcome the other shortcomings of Plaintiff's allegations of nationwide fame. *See United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 2014 WL 6788310, at *20 (N.D. Cal. Dec. 2, 2014). Plaintiff must plausibly plead the other factors too.

Taking all factors together, Plaintiff's allegations "fall short of the high standard required for a dilution claim." *See, e.g.*, *MGA Ent.*, 2018 WL 2448123, at *6. Without satisfying this threshold requirement for fame, Plaintiff's trademark dilution claim should be dismissed.

### 2.  Plaintiff Did Not and Cannot Allege That Google Used Its Trademarks.

Because Plaintiff has not adequately alleged fame, there can be no dilution claim even if Google used the marks in commerce.

As established above, however, Plaintiff only pleaded facts sufficient to show that Daigo—not Google—has used the POPPY PLAYTIME and HUGGY WUGGY marks in commerce. *See supra* § A.1; AC ¶¶ 156–59. Uses that are not commercial in nature will not support a trademark dilution claim. 15 U.S.C. § 1125(c)(1). Nor will uses by third parties on a platform. *Giganews*, 2013

WL 2109963, at *15 (dismissing dilution claim because "Plaintiff does not allege that Defendants themselves intermingled or degraded Plaintiff's marks; rather, Plaintiffs merely allege that Defendants have provided access to files and images (created by third parties) that degrade the marks"). Because Plaintiff has not and cannot establish the POPPY PLAYTIME and HUGGY WUGGY marks are famous or that Google used the marks in commerce after the marks achieved fame, its trademark dilution claim must be dismissed with prejudice.

### C.    Plaintiff's UCL Claim Fails Due to Section 230 and Its Underlying Claims.

Plaintiff's unfair competition claim against Google under California Business and Professional Code § 17200 (the "UCL") is based on allegations that (1) Google distributed the Daigo Apps and (2) Google's DMCA takedown process was inadequate. The UCL allegations based on the Daigo Apps are pleaded as unlawful, unfair, and fraudulent while the allegations stemming from the takedown procedures are claimed to be unfair and fraudulent.

However, Plaintiff's UCL claim is barred because Google has immunity under Section 230 of the CDA. 47 U.S.C. § 230(c)(1). Furthermore, the UCL claim should also be dismissed to the extent that it is based on Plaintiff's claims of trademark or copyright infringement.

### 1.    Section 230 Shields Google from Liability for Plaintiff's UCL Claim.

As established above, Google is entitled to immunity under Section 230, and Plaintiff pleads that Google acted as a "publisher." *Supra* §A.3. Courts have dismissed UCL claims based on Section 230 immunity. *Free Kick Master II*, 140 F. Supp. 3d at 980; *Jurin*, 695 F. Supp. 2d at 1122–23 (finding Google immune under § 230 for third-party trademark use, dismissing UCL claims). Google is entitled to immunity under the CDA, and any claims under the UCL that arise from the publication or reproduction of content created by the relevant third party, Daigo, should be dismissed. *Free Kick Master II*, 140 F. Supp. 3d at 983.

### 2.    Plaintiff's Claims Based on Unlawful Conduct Are Equally Untenable.

The "unlawful" claim is derivative of other alleged violations and rises or falls with said claims. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). When courts dismiss trademark claims in part, they dismiss federal unfair competition claims in part, too. *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1111 (N.D. Cal. 2014); *Performance Designed Prods. LLC*

*v. Plantronics, Inc.*, 2019 WL 3082160, at *7 (S.D. Cal. July 15, 2019). Plaintiff's unfair competition claim is partially based on the allegation that "[b]y committing trademark infringement . . . Google ha[s] engaged in unlawful, unfair, and fraudulent business acts and practices." ¶ 327. If the trademark infringement claims are dismissed, the related UCL claim must be, too.

### 3. Plaintiff's Allegations Based on Copyright Infringement Are Preempted.

Furthermore, to the extent that Plaintiff's unfair competition claim is based on allegations of copyright infringement, it is preempted by the Copyright Act. 17 U.S.C. § 301(a). The Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title." *Id.* In other words, section 301(a) works "to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works," if the rights in question fall "within the scope of the Federal copyright law." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (quoting H.R. Rep. No. 94–1476, at 130 (1976)); *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 970–71 (9th Cir. 2024).

Plaintiff's unfair competition claim is partially based on the allegation that "By committing, controlling, inducing, and benefitting from the Copyright infringement . . . Google [has] engaged in unlawful, unfair, and fraudulent business acts and practices." ¶ 328. This falls squarely within the rights under the Copyright Act and is thus preempted and should be dismissed.

## V.    CONCLUSION.

For the foregoing reasons, Google respectfully seeks an order dismissing with prejudice the following claims against Google: (a) Plaintiff's trademark infringement claims (Counts I, II, and III); (b) Plaintiff's trademark dilution claim (Count IV); and (c) Plaintiff's unfair competition claim (Count VI).

Dated: May 12, 2025

COOLEY LLP

By: */s/ Brendan J. Hughes*
    Brendan J. Hughes (*pro hac vice*)
    Judd D. Lauter
    Jessica M. Williams
    Kayla E. Blaker (*pro hac vice*)

    Attorneys for Defendant GOOGLE LLC